Court is in session. Please be seated and let's call the next case. Yes, Judge. The next case, number 2-1-1-5-9-7, United States v. Jose Antonio Rivera-Nazario. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning. My name is Jackson Wetzel, appearing this morning on behalf of Jose Antonio Rivera-Nazario. If I may, can I reserve three minutes for rebuttal? You may. May it please the Court. The court below erred when it sentenced Mr. Rivera, a first-time offender, in absentia, and in so doing applied a two-level enhancement for obstruction of justice. For this to have been proper, two separate and distinct findings would have been necessary. First, a finding of voluntariness to support the hearing being conducted in absentia in the first place, and second, a finding of willfulness or willfully failing to appear, so as to provide a basis for the obstruction enhancement. Here, the court below erred because the record was empty as to exactly why Mr. Rivera was not present at his sentencing hearing, and the government offered no proof at the sentencing hearing. Therefore, a hearing was held without Mr. Rivera present, and his otherwise appropriate guidelines were enhanced without his ability to comment on that enhancement or the factual basis. Counsel, could you just back up a little bit, please? The court scheduled a sentencing date, is that correct? That is correct. And you got notice and the government got notice? That is correct. And so notice to your client would have gone through you and not an independent notice to the defendant's last known address, is that correct? I'm not exactly sure. We definitely got notice. Our office got notice. That's an important question to answer. So our office got notice, and I would assume some type of notice would have tried to have been given directly to the defendant. The defendant pled guilty, and when you plead guilty, you get a sentencing date. So he was either by video or in person where it took place. He should have known or knows exactly what his sentencing date is going to be. That brings me to something I think is a very key factor in this case, is that he appeared in person for his change of plea hearing on March 4, 2020. The sentencing date was not set at that change of plea hearing. The magistrate judge actually said that the district court would at some time set a plea hearing, or excuse me, a sentencing hearing. So the last time he was in court was March of 2020. The actual scheduling order was then put down I think almost 16 months later in July. It was put down on July 14th of 2021. And so almost 16 months after he was last asked to appear in person in court, a scheduling order is put down scheduling that sentencing hearing for only seven days later. So it did not allow for much time there. And there is nothing in the record to that point, there's absolutely nothing in the record that would indicate that Mr. Rivera was actually aware that this sentencing hearing was taking place. All right. So let's pin this down. So there's nothing in the record indicating that the clerk's office gave him notice at his last known address? That is correct. And so the only notice went to your office's counsel? That is correct. All right. And then what? That is the practice. Excuse me? The practice is that the CMECF notifies counsel. It doesn't notify the defendants. That's correct. And so. All right. So you get notice. And then what does your office do to locate the defendant? Well, again, we would say that the record is fairly empty as to that point. But looking back at the timeline. Maybe because you haven't filled it in. And I'm trying to get you to do that today. We don't know what efforts your office made, and maybe you didn't represent or maybe the Court didn't ask you what effort. Let me put it like this. Did the Court, prior to denying your request for a continuance, ask you what effort you made to find your client or to notify your client? No, Your Honor. I believe there was no question from the Court. Defense counsel appearing at the sentencing hearing made one statement. I believe he said, my efforts to reach my client have not produced any results. There was no question that prompted that statement, and there were no follow-up questions to find out exactly what had happened. And to that point, again, Your Honor, not only is there nothing to indicate that Mr. Rivera had actual notice of the hearing, but he was represented by new substitute counsel at this hearing. Let me add something. If I'm not mistaken, Mr. Rivera, for some time, was not complying with the probation office, with the probation, I mean, the supervision conditions pending sentence. He had failed to report, and he had some issues. And isn't that probative of, you know, voluntarily, he's sort of like absconding from this whole process because he knows he has to report to probation. He was, in fact, reporting, and all of a sudden he stops reporting. Yes. And that's when you get the sentence. I realize you have seven days to locate him, but even before those seven days, your office, I'm sure, if probation had no contact with him, I'm sure your office had no contact with him either. I'm not sure about all of that. He did have some, and again, I would point to the fact that the record is empty in that. And I would also state that it is a government's burden to prove a knowing waiver. As a starting point for the legal issues here, it is a constitutionally protected right for one to be present at their sentencing hearing. Because of that, the sentencing court should indulge any and all reasonable inferences against the finding of voluntariness. And it's our argument here today that that just simply did not happen. There's an empty record, a completely empty record at a hearing where the government offered no proof, and two very significant findings were made against the interests of Mr. Rivera. What you are requesting is that the matter be remanded. He's obviously under custody. He brought be brought again before the judge. These issues explain, and the judge determined them with his presence and then resent him. Am I correct? Yes. That is our request. We think that with him being in front of the court, he could potentially provide some reasons. Again, it is a very ---- And the practical aspect, the reasons could benefit him or they could backfire. The judge could find the same, make these determinations with a lot of other information, which by then would be available. Exactly. And that's what needed to happen. There needed to be something put in the record so as to suffice, to provide an actual basis on which these specific findings of voluntariness and willfulness could be made. And to your question about him having some problems on bail, that is true. He did. I think the first motion notifying bail came in April. That is almost six months after his arrest, so that's when the first motion came. And it does seem that he was still in contact with probation around that time. The second motion notifying bail violation ---- I just want to make sure you're getting Judge Helfie's point, which means that if we would vacate and remand for a further hearing, that your client could end up worse off than he is now at a resentencing. And so you're doing some risk assessment here that I assume your client is aware of. Yes. You understand that? Yes. Okay. That was your point, right? Our argument here is that specific factual findings were made when there were no facts put into the record upon which that finding could be made. And so that was what was necessary. That's really the procedural thing that went wrong here. Going along what I was saying in Judge Thompson, saying if this case gets remanded, there's a hearing, your client has to be aware that the hearing is not limited to the minute, to the record that stood there. There's going to be evidence. I'm sure the government's going to be able to present evidence. You may be able to present mitigating evidence. But anything, it's a brand new hearing. So if he's been imprisoned and he's been misbehaving and there's an awful record up there and there's other aggravating factors, the government is free and the judge has discretion to say, well, I originally in absentia sentenced him to XY amount. But now, you know, we're back at square one and the sentence should be harsher. So your client, you're aware that the client could receive a harsher sentence the same way he could get a lower sentence. Yes. It's one of the risks of going to sentencing. Yes. We are aware of that. But we're asking that it be done in a procedurally correct way where there are facts found or are facts presented in the record upon which the district court could base their decision. And so, again, since it is such a basic constitutionally protected right, the trial court, like we said, should indulge every reasonable inference. One, in going and looking deeper into that case law, Your Honors, the court has a duty to explore any plausible reason that defense counsel can offer for the defendant. In this case, there were a couple offered by defense counsel, one being health related in the nature that Mr. Rivera had a record of struggling with controlled substance use and abuse and that that could have been a non-voluntary reason for his absence, as well as a non-willful reason for his absence. And, again, the burden, since it is a constitutional right to prove a knowing waiver, that burden is on the government. The case law says that the defendant has, like, for example, 24-hour house arrest, electronic marring bracelet, cuts it, disappears. He's not in a halfway house, flees. He's under conditions, and I realize he does have drug problems, but he just simply goes AWOL. He does go AWOL, but accepting that he absconded to be true. And, again, we're arguing here that because none of these motions were litigated or decided, that it's just an empty record. It is fairly reasonable, wouldn't you say, to conclude he does have a drug problem. This is not a guy who is purposely cutting a bracelet, electronic marring bracelet, fleeing from a halfway house or some other facility or, you know, treatment center. This is a person who has these problems, is failing to report and simply continues with those problems. Is that what you're saying? Well, I'm saying that at the time, if he absconded, at the time that he did, all he would have known he was doing was violating his bail conditions. He would not have known that he was going to miss a date certain or voluntarily absent himself from the date. Was there an order for his arrest before sentencing and because he's violating all these conditions? I'm not sure I understand the question. There was an arrest warrant put down at the beginning. At the time because of the violations, correct? Correct. And so going back to it being the government's duty or the government's burden to show voluntary absence, again, the case law says that that is the court's duty to explore any reasons offered plausibly by the government vary depending on defense counsel's ability to proffer plausible reasons. And, again, we would point to the fact that this was new substitute counsel making his first appearance on behalf of the defendant, that that would even more weigh in favor of granting the requested continuance, especially when the government did not object to that continuance.  You have rebuttal, sir. Thank you, Your Honor. Let me ask you something. Counselor, you're arguing, you know, wonderful theory to us, but you know at this point why your client was absent because you've talked to him. I'm not asking you to divulge it to us, but, I mean, it feels like you're arguing that you should win the battle, whereas we keep telling you you might lose the war. I'm actually not exactly sure as to why he was not present on July the 21st. Why wouldn't you, as his defense counsel? You're the appellate counsel, right? Your office is trial counsel, appellate counsel. That's correct. You understand that doesn't make any sense that you would come to court today not knowing the reason your client was present? Well, we think that it wasn't, it was the duty of the trial court, the government to prove that reason and the trial court to assess that. And since the record was empty, that's why we think remand is appropriate. It needs to be filled. And, again, I think Judge Thompson, the message you're sending, that may be a valid reason for remand, but what we're saying is I think, you know, again, we're not here to give you advice, but I think it would be prudent for you or somebody from your office to sit with your client and say, in the event it's remanded, it could be much worse, it could be much better, but it could be much worse. And he's got to be aware of that possibility. And I have to say, it was yesterday or the day before we had an appeal. It was withdrawn at one point. And I'm not suggesting you have to withdraw the appeal, but I think it's something that is diligent counsel. You should discuss with your client. We're going to decide the case one way or another. But, again, as Judge Thompson said, you may win the battle, but lose the war. And you might lose the war and end up with an amputated arm and a leg. And, again, we're not suggesting it's going to go either way, but it's something I think it's important for your client to know. Any other questions? Okay. So you got rebuttal anyway. Thank you, counsel. Mr. Bezoso. At this time, if counsel for the government would introduce himself on the record to begin. Good morning, Your Honor, and may it please the Court. Francisco Bezoso Martinez for the government. Counsel, why wasn't it an abuse of discretion not to grant a short continuance? With new counsel, we had just been through raging COVID. All of the systems were disrupted. Why wasn't that an abuse of discretion just to give counsel an opportunity to make some inquiry as to where his client might be? Well, Your Honor, first I would like to point out that at all times this defendant was represented by the public defender's office. So new counsel, through his office, would have access to all the documents and relevant files to be familiarized with the particularities of this case. Moreover, as to why it was not an abuse of discretion to not grant this continuance is the fact that it had implicitly already been continued for over 10 months since he had absconded. And so at this point... But COVID was raging. We were all inside. We were all inside, yes, but he was still under a duty to be reporting to probation at this time. He was on. This is a case of a... There was an arrest warrant issued some months before. Correct. That's outstanding. Correct. And COVID or not, that did not paralyze law enforcement efforts. So for 10 months, did law enforcement make efforts to find him, to execute the warrant? Or were they dealing with COVID too? It is my understanding that, yes, they were, Your Honor. In fact, at the sentencing hearing, after having found that he had absconded, the district court nevertheless contacted the marshals to inquire as to an update as to their efforts and their ability to have been located them. And they informed the district court that they had received information that he had been going back to his house to visit his partner. But that's not information in the record directly that a marshal came at the sentencing hearing or testified that or the U.S. attorney proffered that. That was what the court instructed that the marshals had told her. Am I correct? Correct, Your Honor. And so with that information, there was a reasonable possibility that the marshals would have been able to apprehend him. I mean, doesn't that cut in favor of an abuse of discretion for not granting the continuance? Well, in that case, Your Honor, the voluntariness issue would be off the table because if he were arrested, he'd be there involuntarily. And going back to what Judge Helpe suggested would happen on remand, that would cut both ways because that would open the possibility of maybe not the two-level enhancements for obstruction, but definitely for a possibility of taking away his three-level reduction for acceptance of responsibility. Or it could be a variance upwards if there's evidence of record. Again, this was not taken as a sentencing consideration, but if it goes back, and what you're saying, I'm sure if it goes back and the defense presents evidence, you're free to present that. And you could call the marshal, and the marshal would say, yes, we went there 21 times. We did not arrest him that time, X, Y, or Z. But he was there, and he's going late at night, leaving early in the morning. Again, it could work in his favor. It could work against him. Am I correct? Correct, Your Honor. And so what the record shows here is that showing that he was not only voluntarily absent, but willfully so, is that we have a history of a person that was. I mean, the record clearly shows that he absconded from his probation responsibilities. But does the record indicate that he voluntarily didn't come to court for sentencing when the record indicates that he wasn't given a specific date at the time he pled? And so this situation with this particular individual necessarily meant someone was going to have to give him notice of a hearing date at some point. Correct, Your Honor. There wasn't a date at the time of the change of plea. However, there are certain factors when combined paint a picture of this was, in fact, a voluntary and willful act. From the sentencing hearing, not from probation, but from the sentencing. Yes, from the sentencing hearing. First of all, at this stage of the proceedings, the only thing left was the sentencing, and this was very clear to him as he told the probation at the pre-sentence interview that he was feeling anxious about this upcoming sentencing and ultimately having to go to prison. And second of all, as informed by the probation officer in their motion, after all of his noncompliance, while in home incarceration and location monitoring, he packed up his bags, in the words of his consensual partner, and was no longer living there. That action, that seals the deal in showing that this was an absence that was voluntary and willful, this was not something related to his drug issues, for instance, which, yes, he did test positive back in April, but in the motion from the probation in August, it showed that he had been receiving treatment, he had been testing negative ever since April. So everything in the record suggests that he had been coping with his drug issues. So there's nothing in the record to suggest that that was a reason for a quote-unquote involuntary absence. And so the fact that the sentencing hearing was not yet scheduled is irrelevant here because it was the last phase of the proceedings that was left, and this was very well known to him, and he decided to, again, pack up his bags, move out, and leave. And what did he do for the next 10 months? He never contacted the probation. He never contacted district court. He never contacted the public defender's office to inquire, what's the status of my case? Have they scheduled the sentencing hearing? When do I need to come in? There was no effort on his part to comply with his promise of being on bond, saying that I will be present at these proceedings. And, of course, much less to comply with the probation conditions. Let me ask you, if the case were to be remanded, would the pre-sentence report need to be amended? It could, Your Honor. It's not necessary. It's not necessary, but the district judge could say, please amend the pre-sentence report. Sure, yes. Because, again, if I were the sentencing judge and I'm told by this court to re-sentence, I would like to have a more complete picture then. Sure, and in that case, like I mentioned earlier, and you yourself, Your Honor, mentioned during broader counsel's argument, that could backfire. It could still impose this two-level enhancement for obstruction, and it could also go further and say, you ran off, we had to go out and arrest you, which the government ultimately did at the end of February of this year, so I'm going to take away your three-level reduction. So he would be in a much worse place than he is now if sent back on remand. There is that very distinct possibility. Yes, Your Honor. Anything further, Mr. Wright? And if the panel doesn't have any further questions, we rely on the briefs. We're showing no hands, so thank you very much. And, Counsel Wetzel, you have your rebuttal time. At this time, if Attorney Wetzel will reintroduce himself on the record for three minutes of rebuttal. Yes. Jackson Wetzel, Assistant Federal Defender, on behalf of Jose Antonio Rivera Nazario. May it please the Court. First and foremost, I do want to just make it clear that we're not saying that a court can never sentence a defendant in absentia, or, of course, never find a defendant to be willfully present. We're just saying that the first setting at the hearing under these circumstances, 16 months after the last time in court, 9 months since the issuance of an arrest warrant, with new substitute counsel, with a reasonable request for a brief continuance, and no objection from the government. Under all of those circumstances, it was just an improper juncture at a time to make these specific and crucial rulings. Let me put it this way. Would you be saying that, again, with the acquiescence of the government, only 7 days, you asked for a continuance, that would be an abuse of discretion? Yes. Under those circumstances. Yes, Your Honor. So simply under those circumstances, we would be able to remand. Am I correct? Yes. We're asking for remand for resentencing. And second, just to rebut some of the points made by Brother Counsel. I know we talked a little bit about the marshal's involvement at the sentencing hearing, which was basically my understanding there was a message sent to the court clerk that said something along the lines of, we have information that he may be revisiting the girlfriend or the ex-girlfriend, and we believe we may be able to apprehend him with a little more surveillance. To the court's point, again, the record was empty because no witness was called and there were no, there was no evidence as to any actual. The message was to the court, to Judge Navigal's courtroom deputy that the marshals would be. Correct. That is correct. And so, first of all, we say that the record remained empty, but even looking at the contents of that message with them saying they could go get him, that would weigh in favor of granting the short continuance so that he could be apprehended and could be sentenced in his presence. Counsel, can I ask what the import of substitute counsel is? What is that adding to the argument here? Well, it's new counsel who was not able to form a personal attorney-client relationship with the defendant prior to sentencing, which is meaningful. Could new counsel have contacted prior counsel? He could have. Prior counsel left the office, right? Had resigned? That is correct. I believe around June of 2021. Okay, so this is not the instance where ex-attorney, for example, the attorney was a trial attorney, now he's an appellate attorney, he no longer has the case and gets reassigned. This is not a reassignment issue. It's simply new counsel comes in. I mean, counsel left and the case was reassigned within the office. Correct. That is correct. The thrust of my question is, if it were the same counsel, the court presumably would have been asking counsel, what efforts have you made to get in touch with your client since we gave notice to you? How does that differ when it's substitute counsel? With it being substitute counsel, and again, looking at the case law where it says the duty of the court to explore is based off of counsel's ability to proffer plausible reasons, that's the crux of the point we're trying to make, and that's why substitute counsel just being assigned to the case, I think it's just about six weeks he enters his motion or notice of appearance prior to the actual sentencing hearing being held. So we have almost two years from arrest to sentencing hearing, facts that could have been put into the record. Older counsel, original counsel represented him for the majority of that time and could have had that ability. Perhaps if the court had questioned original counsel more, the record could have been built up. But in this case, there was new counsel who didn't have the information. There is no inquiry from the court, and so the record remained empty. And again, for that reason, we'd ask for a remand. Okay. Thank you, counsel. Okay. Let's call the next case. Yes, Judge. That concludes argument in this case.